## IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF OKLAHOMA

**(1) JLL CONSULTING, LLC,**

      **Plaintiff,**

**v.**

**(1) GAILLARDIA COMMUNITY ASSOCIATION, INC., an Oklahoma Not-for-Profit Corporation; (2) GAILLARDIA INVESTORS, LLC, an Oklahoma Limited Liability Company; (3) JAMES FLOYD KYSER, an individual; and (4) L. DICKSON FLAKE, an individual,**

      **Defendants.**

Case No. CIV-19-762-D
_____

**JURY TRIAL DEMANDED**

## COMPLAINT

Plaintiff, JLL Consulting, LLC ("JLL"), for its Complaint against Defendants (1) Gaillardia Community Association, Inc. ("GCA"); (2) Gaillardia Investors, LLC ("GI"); (3) James Floyd Kyser ("Kyser"); and (4) L. Dickson Flake ("Flake"), alleges and states as follows:

### I.
### PARTIES, JURISDICTION, AND VENUE

1.    JLL is a limited liability company formed under the laws of Florida, and its sole member, Ernest Litty, Jr., is also a citizen of, and domiciled in, Florida.

2.    GCA is an Oklahoma not-for-profit corporation, and, upon information and belief, has its principal place of business in Oklahoma City, Oklahoma.

3.      GI is an Oklahoma limited liability company, and, upon information and belief, has its principal place of business in Oklahoma City, Oklahoma.

4.      Kyser, an individual, is the managing member of GI and, upon information and belief, is domiciled in Arkansas.

5.      Flake, an individual, upon information and belief, is domiciled in Arkansas.

6.      The matter in controversy, exclusive of interest and costs, exceeds the sum of Seventy-Five Thousand Dollars ($75,000.00) and, as shown herein, diversity of citizenship exists.

7.      This Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1332(a)(1), and venue is proper in this Court pursuant to 28 U.S.C. § 1391(b)(1)–(2), because a substantial part of the events or omissions giving rise to this action occurred within this judicial district, and because the both GCA and GI are domiciled in this judicial district.

## II.
## FACTUAL BACKGROUND

8.      This case concerns a certain section of the Gaillardia Development in Oklahoma City, Oklahoma known as the Promenade at Gaillardia or, officially, Gaillardia Residential Community, Section X (the "Promenade").

### Creation of JLL's Construction Rights and Development Rights

9.      By a Supplemental Declaration of Covenants, Conditions, and Restrictions for Gaillardia, Gaillardia Development Company, LLC ("GDC" as Declarant) included and added the Promenade to the terms of prior Declarations, as amended and supplemented, for the Gaillardia Residential Properties; GDC both dated and recorded the same on August

2

17, 2010, in the Oklahoma County land records at Book RE11435, Page 904 (the "Supplemental Declaration").

10.     Within the same Supplemental Declaration, GDC also (i) reserved unto itself the exclusive right to develop, build, and market all improvements ("Development Rights") within the Promenade and (ii) reserved unto Tri-Core Custom Homes, LLC, d/b/a Gaillardia Construction Company ("Tri-Core Custom Homes"), the exclusive right to perform and complete the construction of all improvements within the Promenade ("Construction Rights").

11.     By a Binding Agreement, executed on March 13, 2014, but effective March 1, 2015, and recorded on March 26, 2015, in the Office of the County Clerk of Oklahoma County, Oklahoma, Phillip Herrington, as the sole and managing member of Tri-Core Custom Homes, stated that Tri-Core Custom Homes and JLL had entered into a binding agreement under which Tri-Core Custom Homes would sell to JLL its exclusive Construction and Marketing Rights in the Promenade under a Purchase and Sale Agreement.

12.     In mid-March, 2015—effective March 1, 2015—JLL, as purchaser, as well as both Tri-Core Custom Homes and GDC, as Sellers, entered into a Purchase and Sale Agreement in order to fully memorialize and document the transaction described in the Binding Agreement, under which GDC and Tri-Core Custom Homes agreed to sell, and JLL agreed to purchase, the Development Rights reserved by GDC and the Construction Rights reserved unto Tri-Core Custom Homes in the Supplemental Declaration.  Once again, the consideration recited in that Agreement is "certain financial accommodations"

3

from JLL to Tri-Core Custom Homes and GDC.

13.     By an Amendment to Supplemental Declaration of Covenants, Conditions, and Restrictions for Gaillardia and Assignment ("Amendment to Supplemental Declaration"), GDC, Tri-Core Custom Homes, JLL and others both clarified and placed in the public record the fact that JLL owned the sole and exclusive right, title, and interest in and to the Development Rights and the Construction Rights for the Promenade, effective March 1, 2015, and again stated that such Rights were assigned to JLL.  The Amendment to Supplemental Declaration was filed in the Office of the County Clerk of Oklahoma County, Oklahoma on July 22, 2015 in Book RE 12882, Page 785.

### Prior Relevant Litigation

14.     On October 28, 2015, JLL filed a Complaint in the United States District Court for the Western District of Oklahoma seeking declaratory judgment that it was the owner of the Development and the Construction Rights in the Promenade, said litigation was styled as *JLL Consulting, LLC v. Timberdell Road Group, LLC*, Case No. 5:15-cv-01211-F ("Timberdell Litigation").

15.     In the Timberdell Litigation, JLL provided evidence to the court, which showed that it had been granted and vested with (i) the Development Rights and (ii) the Construction Rights.

16.     On November 3, 2016, the Court in the Timberdell Litigation entered an Order Granting Summary Judgment to Plaintiff JLL. *See JLL Consulting, LLC v. Timberdell Road Group, LLC*, Case No. 5:15-cv-01211-F, Dkt. No. 54.

17.     The Court, in that Order, declared, in part, that the transfer of the

4

Development Rights and Construction Rights to JLL, pursuant to certain recorded and unrecorded documents, was both effective and valid.

18.     In or around this same time, another litigation matter relating to the Promenade was occurring in the District Court of Oklahoma County between GCA as against numerous parties, which importantly included, but was not limited to the following: GI; GDC; Gaillardia Brownstones I, LLC; Philip L. Herrington; Tri-Core Custom Homes, LLC; *et al.*; that litigation was styled as *Gaillardia Community Association, Inc. v. Gaillardia Development Company, LLC et al.*, CJ-2015-3000 ("GCA Litigation").

19.     During the course of the GCA Litigation, GCA foreclosed on certain property within the Promenade; however, the trial court entered an agreed order in the GCA Litigation—to which both GCA and GI agreed—that specifically held nothing in its judgment was to be construed as either a foreclosure, or determination of the validity, lien, or ownership in or to, either the Promenade, the Construction Rights, or the Development Rights.

### Effect of Prior Relevant Litigation

20.     The effect of both the Timberdell Litigation and the GCA Litigation was that, while GI effectively owned the Promenade's physical real property, JLL owned the exclusive rights to develop, construct upon, and market the Promenade's physical real property through its Development Rights and Construction Rights.

21.     Thus, before GI (or any of GI's agents or assigns) could either develop, construct, or market any residences (or any other development) within the Promenade, GI was required to obtain the consent or participation of JLL pursuant to JLL's Construction

Rights and Development Rights.

22.    GCA, likewise, had an interest in the development of residences on and within the Promenade, because such development lies within the lands encompassed by GCA as an HOA and development of the Promenade would result in dues paid to GCA pursuant to the recorded real property covenants.

**Communications Related to the Promenade's Construction and Development**

23.    Throughout the course of 2017, 2018, and the early part of 2019, JLL discussed with each of the Defendants, to some degree, the Promenade's replat, which would then be presented to the Planning Department of the City of Oklahoma City ("OKCPD") for approval; some of the most recent and relevant communications were as follows:

24.    On January 12, 2019, in response to JLL's communication to Kyser inquiring about the Promenade's development, Kyser sent an e-mail to JLL asking that JLL stand by and await a forthcoming response.

25.    On March 22, 2019, Kyser e-mailed a copy of the then-most-recent replat and development standards for the Promenade to JLL. In response, JLL reminded both Kyser and Flake of JLL's Construction Rights and Development Rights and JLL's expectation that those Rights be acknowledged accordingly.

26.    On or around April 3, 2019, after JLL found out that GI, acting through both Flake and Kyser, had submitted a revised plan of development for the Promenade to GCA without his knowledge, JLL sent communication to GCA reminding GCA of JLL's real property interest in and to the Promenade and, thus, no development or construction may

6

proceed without JLL's participation and assent.

27.     Two days later, on April 5, 2019, the attorney for GCA responded to JLL's communication referenced in ¶ 26 *supra* and represented both (1) that GCA had communicated to GI that GI must resolve all issues with JLL regarding the Promenade, and (2) that GI communicated that it would "stand by that responsibility."

28.     On June 19, 2019, JLL sent an e-mail to Kyser asking to be updated on the progress with the Promenade and any proposed development plans.

29.     On June 25, 2019, Kyser responded that he had been awaiting the final replat of the Promenade and that the Promenade replat application had been submitted to the OKCPD on June 7, 2019. In this same e-mail, Kyser advised JLL of utility plans, selection of builders, and other matters previously discussed with JLL in light of his Construction Rights and Development Rights.

30.     Finally, Kyser also noted that the OKCPD would have a hearing on the submitted application on July 11, 2019.

31.     The OKCPD approved the Promenade final replat on July 11, 2019.

32.     On July 22, 2019, counsel for GI sent a letter to the undersigned informing them and JLL of a "Revocation of Prior Amendment and Amended and Restated Supplemental Declaration of Covenants, Conditions, and Restrictions for Gaillardia" ("Revocation"), which had been recorded in the Oklahoma County land records on April 16, 2019—a mere 11 days after the April 5th communication referenced in ¶ 27 *supra*; said Revocation purported to "undo" JLL's Construction Rights and Development Rights previously granted, vested, and in fact deemed valid by this Court.

7

33.     Since 2015, each of the Defendants have been fully knowledgeable of JLL's exclusive Development Rights and Construction Rights, and each have been equally knowledgeable that JLL—in light of, and as owner of, these same Rights—has maintained an expectancy of compensation or other benefit should any development, construction, or marketing take place within the Promenade.

34.     Despite multiple assurances from Defendants, JLL learned that GI, as well as Kyser and Flake, for their own individual benefit, had come to a side agreement with GCA, in which Kyser and Flake would cause GI—in conjunction with GCA—to record the Revocation.

35.     JLL also learned that the Revocation was recorded in April, but not brought to JLL's attention until July 22, 2019, and then only after the OKCPD had approved the submitted final replat of the Promenade.

36.     Kyser and Flake—on behalf of GI and for each of their own individual benefit—in conjunction with GCA both submitted and obtained approval of their own replat of the Promenade without either honoring or acknowledging JLL's Development Rights and Construction Rights.

### III.
### FIRST CAUSE OF ACTION
### (DECLARATORY JUDGMENT – THE REVOCATION IS VOID AND JLL'S
### DEVELOPMENT RIGHTS AND CONSTRUCTION RIGHTS ARE
### UNAFFECTED THEREBY – *AS AGAINST ALL DEFENDANTS*)

37.     JLL both adopts and incorporates ¶¶ 1–36 as if fully set forth below.

38.     An actual justiciable controversy exists regarding the effect of the Revocation on JLL's Construction Rights and Development Rights.

39.     In light of both the Revocation's language and the Defendants' conduct, as set forth herein, JLL is entitled to an Order from this Court that the Revocation has no effect on the previously adjudicated validity and enforceability of JLL's Construction Rights and Development Rights.

WHEREFORE, JLL prays for judgment of this Court determining that the Revocation is ineffective to divest JLL of its Construction Rights and Development Rights, and for such other relief that this Court finds necessary and proper under the circumstances.

### IV.
### SECOND CAUSE OF ACTION
### (TORTIOUS INTERFERENCE WITH
### PROSPECTIVE ECONOMIC ADVANTAGE – *AS AGAINST ALL
### DEFENDANTS*)

40.     JLL both adopts and incorporates ¶¶ 1–39 as if fully set forth below.

41.     Upon information and belief, each of the Defendants were knowledgeable of JLL's reasonable expectation of profit as a result of JLL's valid and enforceable Development Rights and Construction Rights.

42.     Upon information and belief, each of the Defendants intentionally and improperly interfered with said reasonable expectation of profit by, in part, misrepresenting

1944297.1:000246:00002

to JLL the status of negotiations and replatting discussions as related to the Promenade, working together to draft and file the Revocation, and submitting replat information to the City of Oklahoma City without JLL's knowledge or involvement and despite prior representations that such would not occur.

43.     Upon information and belief, the Defendants' conduct was driven by the Defendants' desire to divest JLL of its property rights and to their own benefit.

44.     With respect to Kyser and Flake specifically, upon information and belief, each of these individual Defendants acted for their own personal benefit and contrary to the interest of GI.

45.     JLL was damaged as a result of the Defendants' wrongful conduct, as described herein.

WHEREFORE, JLL prays for judgment of this Court awarding JLL monetary damages as permitted by law, including but not limited to punitive damages, and for such other relief that this Court finds necessary and proper under the circumstances.

## V.
## THIRD CAUSE OF ACTION
## (CIVIL CONSPIRACY– *AS AGAINST ALL DEFENDANTS*)

46.     JLL both adopts and incorporates ¶¶ 1–45 as if fully set forth below.

47.     Upon information and belief, each of the Defendants knowingly worked together to intentionally and wrongfully interfere with JLL's Construction Rights and Development Rights, and each of the Defendants knowingly worked together to intentionally and wrongfully interfere with JLL's reasonable expectation of profit therefrom.

10

48.     JLL has been directly and proximately injured as a result of the Defendants' wrongful conduct, as described herein.

WHEREFORE, JLL prays for judgment of this Court awarding JLL monetary damages as permitted by law, including but not limited to punitive damages, and for such other relief that this Court finds necessary and proper under the circumstances.

## VI.
## FOURTH CAUSE OF ACTION
## (CONSTRUCTIVE FRAUD – *AS AGAINST KYSER ONLY*)

49.     JLL both adopts and incorporates ¶¶ 1–48 as if fully set forth below.

50.     Through the communications referenced in ¶¶ 24–34, and upon information and belief, Kyser intentionally misled JLL and intentionally conveyed to JLL a false impression that both Kyser and the other Defendants both acknowledged, and intended to honor, JLL's Construction Rights and Development Rights.

51.     Upon information and belief, by choosing to convey only some of the material information to JLL relating to the Promenade and JLL's Development Rights and Construction Rights, and choosing to withhold other known and equally (if not more so) material information from JLL, Kyser had a duty to divulge *all* material facts to JLL regarding the same.

52.     By intentionally withholding or concealing material information from JLL, Kyser misled JLL, and JLL did reasonably rely upon Kyser's communications to JLL's detriment.

WHEREFORE, JLL prays for judgment of this Court against Kyser and in favor of JLL awarding JLL monetary damages as permitted by law, including but not limited to

11

punitive damages, and for such other relief that this Court finds necessary and proper under the circumstances.

## VII.
## FIFTH CAUSE OF ACTION
## (CIVIL CONSPIRACY TO COMMIT FRAUD – *AS AGAINST FLAKE ONLY*)

53.     JLL both adopts and incorporates ¶¶ 1–52 as if fully set forth below.

54.     Upon information and belief, Flake knowingly worked with Kyser to intentionally withhold material information from JLL, despite Flake's knowledge that Kyser had conveyed other information to JLL regarding the Promenade and JLL's Development Rights and Construction Rights.

55.     Upon information and belief, despite Flake's knowledge that Kyser was communicating only part of the material facts to JLL, Flake did not correct these omissions.

56.     Instead, upon information and belief, Flake knowingly assisted Kyser with misleading JLL, and JLL has been directly and proximately injured as a result of Flake's wrongful conduct, as described herein.

WHEREFORE, JLL prays for judgment of this Court against Flake and in favor of JLL awarding JLL monetary damages as permitted by law, including but not limited to punitive damages, and for such other relief that this Court finds necessary and proper under the circumstances.

12

Dated:          August 20, 2019                    Respectfully submitted,

                                                   **HALL, ESTILL, HARDWICK,**
                                                   **GABLE, GOLDEN & NELSON, P.C.**

                                   By:    *s/Larry G. Ball*
                                          Larry G. Ball, OBA #12205
                                          Tami J. Hines, OBA #32014
                                          100 North Broadway, Suite 2900
                                          Oklahoma City, OK  73102-8865
                                          Telephone:  (405) 553-2828
                                          Facsimile:  (405) 553-2855
                                          Email:  lball@hallestill.com
                                          Email:  thines@hallestill.com
                                          **ATTORNEYS FOR PLAINTIFF,**
                                          **JLL CONSULTING, LLC**